LEWIS O'BRYAN v. HELEN P. SLIGH, et al.

152 So. 427.

Division B.

Opinion Filed December 22, 1933.

Petition for Rehearing Denied January 23, 1934.

G. P. Garrett, for Appellant;

Robert L. Williams, W. J. Steed, W. A. Pattishall, for Appellee.

PER CURIAM.—This cause having heretofore been submitted to the Court upon the transcript of the record of the decree herein, and briefs and argument of counsel for the respective parties, and the record having been seen and inspected, and the Court being now advised of its judgment to be given in the premises, it seems to the Court that there is no error in the said decree; it is, therefore, considered, ordered and adjudged by the Court that the said decree of the circuit court be, and the same is hereby affirmed.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., and HUTCHINSON, Circuit Judge, concur.

## ON PETITION FOR REHEARING.

PER CURIAM.—This case is before us on petition for rehearing after a Per Curiam order of affirmance had been entered on appeal from the order of the Chancellor striking certain paragraphs of the answer to the original bill of complaint and other certain paragraphs of the answer to the amended bill of complaint and counter claim interposed by one of the defendants who held a second mortgage on the property.

The stricken allegations of the answer and the counter claim were based upon the alleged conditions which the answering defendant sought to set up for the purpose of showing that the first mortgage should be deemed and held to have been paid; or that there were sufficient funds in the hands of a third party to pay off and discharge the first mortgage, which funds such third party was bound to pay over to the assignee of the mortgage which would result in defendant's second mortgage becoming a first lien on the property, whereby he would be entitled to enforce the same by foreclosure in this suit.

There was no error committed by the Circuit Court in striking the objectionable portions of the answer which were stricken, nor in striking the counter claim.

The record shows that the mortgagor entered into a contract with a co-partnership composed of one S. J. Sligh and other persons; that Sligh acted for the co-partnership in this transaction and that this co-partnership agreed to take over the grove property of the mortgagor, cultivate it and care for the grove and market the fruit, with an option to purchase the fruit, if no better price should be offered than the price offered by it. The proceeds from the sale of the fruit were to be divided equally between the parties.

There was a mortgage made and executed by the owner to secure the payment of a certain sum of money to State Bank of Orlando & Trust Company. The mortgage and the notes which it secured called for payments to be made in a certain manner but after the execution of the mortgage, and after the contract above referred to was entered into between the grove owner and the caretaker, the mortgagor made an agreement with the mortgagee, on November 7, 1927, by which it was agreed that the mortgagor would pay $1,000.00 out of the proceeds of the then present crop of fruit and would pay the mortgagee the sum of $1500.00 each year until the total amount of the mortgage was paid. The mortgagor then addressed a letter to the caretaker in the following language, to-wit:

"THE STATE BANK OF ORLANDO & TRUST COMPANY
"Orlando, Florida, November 7th, 1927.
"S. J. Sligh & Company, Orlando, Florida.

"Dear Sirs: On April 15th, 1927, I made a contract with you to handle my grove known as the Southport Grove. This contract is recorded in Osceola County records, Misc. book 'L,' page 283. The firm of S. J. Sligh & Company is

in reality S. J. Sligh, Sophie R. Grundler and L. M. Hall, co-partners.

"I have recently given the State Bank of Orlando & Trust Company, Orlando, Florida, a mortgage on this property for $6500.00, on which I agreed to pay the said State Bank of Orlando & Trust Company $1,000 out of the proceeds of my present crop of fruit and every year thereafter agreed to pay the State Bank of Orlando & Trust Company $1500.00 until the total amount of my mortgage is paid. I would, therefore, ask that you kindly deduct from my remittance $1,000, this year and pay to the State Bank of Orlando & Trust Company and every year thereafter deduct $1500.00 until the total amount of my mortgage indebtedness is paid in full.

You, of course, will in no way be liable in the event of freeze, nor in the event that the fruit does not bring a sufficient amount to pay the State Bank as instructed above.

"Yours very truly,

"DORA S. LEE (Seal)

"Witnesses: Charles A. Stone,

"M. H. Leeper,

This letter was transmitted by the mortgagee to the caretaker with a letter as follows:

"S. J. Sligh & Company,

907 State Bank Building, Orlando, Florida.

"Dear Sirs: Enclosed you will please find dated November 7th, 1927, signed by Mrs. Dora S. Lee, which is self-explanatory.

"Won't you kindly acknowledge receipt of this letter and advise whether or not you will follow the instructions as contained in Mrs. Lee's letter. You will no doubt recall

our conversation in your office sometime back and this is in line with that conversation.

"Yours very truly,

"L. P. BRADY, *Assistant Cashier.*"

The caretaker replied as follows:

"State Bank of Orlando & Trust Co., Orlando, Fla.

"Gentlemen: Your letter of November 16, enclosing letter from Mrs. Dora S. Lee, dated November 7, 1927, received.

"We shall be glad to co-operate with you in this matter, and will give you the money as she requests, each year out of the proceeds of the fruit.

"Yours very truly,

"S. J. SLIGH & Co."

From this correspondence it will be seen that the caretaker in nowise assumed the obligation of the mortgagor, but simply agreed as the agent of both parties to transmit so much of the proceeds of the fruit belonging to the mortgagor as should come into its hands each year to be applied upon the indebtedness of the mortgagor. Some payments were made by the caretaker in accordance with this agreement. Then the mortgage was transferred and assigned to Helen P. Sligh, wife of S. J. Sligh. Finally defaults occurred and Helen P. Sligh brought suit to foreclose the mortgage.

It is elementary that Helen P. Sligh could not be held responsible for the failure of S. J. Sligh & Company to account for the proceeds of the fruit, if there were any, due to the mortgagor.

The mortgage and notes sought to be foreclosed were the obligations of the mortgagor and were not the obligation of S. J. Sligh & Company. S. J. Sligh & Company was neither a necessary nor proper party to this suit. The contract be-

tween the mortgagor and S. J. Sligh & Company was not the contract with S. J. Sligh as an individual but was the contract of the co-partnership of which he was a member, and probably manager. If that co-partnership failed to make proper accounting the mortgagor has ·her right of action to procure an accounting. But the right of the junior mortgagee is against the mortgagor and not against S. J. Sligh & Company. The fact that the assignee of a mortgage is the wife of a member of the co-partnership whose duty it was to account to the mortgagor for the proceeds of certain fruit does not deprive her of the right to foreclose the mortgage against the mortgagor without looking to her husband, or that co-partnership of which he is a member, for the payment of the mortgage. Her rights are not different from what they would be if no member of that co-partnership were so related to her.

Therefore, petition for rehearing should be, and is, denied without prejudice to the rights of appellant to seek relief in any appropriate proceeding with respect to the subject matter of the counter claim rejected in this case.

DAVIS, C. J., and WHITFIELD, TERRELL and BUFORD, J .J., concur.